IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| KATHY J. CAUDILL-SMITH, | CASE NO. 1:15-cv-01274 |
| Plaintiff, | JUDGE PATRICIA A. GAUGHAN |
| v. | MAGISTRATE JUDGE KATHLEEN B. BURKE |
| COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | **REPORT AND RECOMMENDATION** |

Plaintiff Kathy J. Caudill-Smith ("Plaintiff" or "Caudill-Smith") seeks judicial review of the final decision of Defendant Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB").  Doc. 1.  This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).  This matter has been referred to the undersigned Magistrate Judge pursuant to Local Rule 72.2.

For the reasons set forth below, the undersigned recommends that the Court **AFFIRM** the Commissioner's decision.

### I. Procedural History

Caudill-Smith protectively filed an application for DIB on January 10, 2012.[1]  Tr. 14, 225-226, 241.  She alleged a disability onset date of January 3, 2012 (Tr. 14, 225, 241), and

---

[1] The Social Security Administration explains that "protective filing date" is "The date you first contact us about filing for benefits. It may be used to establish an earlier application date than when we receive your signed application." http://www.socialsecurity.gov/agency/glossary/ (last visited 4/20/2016).

1

alleged disability due to sleep apnea, back injury, fibromyalgia, severe depression, chronic pain, chronic fatigue, rotator cuff damage, golfer's elbow damage, and restless leg syndrome (Tr. 128, 138, 245).  After initial denial by the state agency (Tr. 128-132) and denial upon reconsideration (Tr. 138-140), Caudill-Smith requested a hearing (Tr. 141).  An initial hearing was held before Administrative Law Judge Penny Loucas ("ALJ") on September 16, 2013.  Tr. 83-96.  A supplemental hearing was held before the ALJ on December 2, 2013.[2]  Tr. 41-80.

In her February 7, 2014, decision (Tr. 11-40), the ALJ determined that Caudill-Smith had not been under a disability since January 3, 2012, through the date of the decision (Tr. 15, 33).  Caudill-Smith requested review of the ALJ's decision by the Appeals Council.  Tr. 10.  On April 22, 2015, the Appeals Council denied Caudill-Smith's request for review, making the ALJ's decision the final decision of the Commissioner.  Tr. 1-7.

## II. Evidence

### A.  Personal, educational, and vocational evidence

Caudill-Smith was born in 1965.  Tr. 225.  She is married and she and her husband have permanent custody of their granddaughter. Tr. 46, 47, 48.  Caudill-Smith graduated from high school.  Tr. 72.  Her past relevant work includes work as a fiberglass press operator and as a rural mail carrier.  Tr. 45, 86-88, 90-91.  She worked as a mail carrier from 1999 through January 2012.  Tr. 43, 90, 229, 245.

### B.  Evidence pertaining to migraine headaches[3]

---

[2] Caudill-Smith's attorney was delayed in another hearing and arrived late to the September 16, 2013, hearing so the hearing could not be completed that day.  Tr. 92, 96, 330.  Thus, a supplemental hearing was conducted on December 2, 2103.  Tr. 44.  The testimony taken at the initial hearing was primarily limited to testimony regarding Caudill-Smith's past work.  Tr. 85-96.

[3] Caudill-Smith's sole argument is that the ALJ did not consider evidence regarding her migraine headaches when assessing her RFC.  Doc. 15, Doc. 19.  Thus, although Caudill-Smith's brief contains a lengthy summary of her medical history, the evidence summarized herein is generally limited to evidence relating to the sole argument advanced in this appeal.

During a medical visit for hip and back pain on May 17, 2012, (Tr. 612-617), Caudill-Smith complained of frequent headaches (Tr. 614). During a mental health visit in January 2013, Caudill-Smith reported "debilitating symptoms from fibromyalgia including . . . headaches . . ." Tr. 1144.

On monthly calendars dated December 2012 through September 2013, Caudill-Smith kept track of when she had a migraine headache. Tr. 320-329. With the exception of February and August 2013,[4] on average Caudill-Smith recorded two or more migraines each week during the period of December 2012 through the first two weeks of September 2013. Tr. 321-329.

On March 5, 2013, Caudill-Smith saw one of her physicians, David Parker, M.D., of The Ashtabula Clinic with complaints of migraine headaches. Tr. 1157-1158. Caudill-Smith relayed to Dr. Parker that she had been diagnosed with migraines about a year prior. Tr. 1157. Caudill-Smith had been taking Imitrex, which Caudill-Smith indicated had been working well. Tr. 1157. However, she had been out of Imitrex and had only used the samples that she had been provided. Tr. 1157. Caudill-Smith reported that her headaches were becoming more significant and she was having a bad headache (as severe as 9/10) at least twice each week and sometimes three to five times per week. Tr. 1157. Caudill-Smith described having photophobia, nausea and noise sensitivity with her headaches. Tr. 1157. She usually did not vomit and her headaches tended to resolve after sleeping. Tr. 1157. Caudill-Smith estimated that her headaches lasted two to five hours. Tr. 1157. Dr. Parker recommended 100 mg of Imitrex at the start of a migraine, with instructions to repeat after two hours if her headache did not resolve. Tr. 1157. Dr. Parker noted that Caudill-Smith should start a headache calendar and bring it in with her in four weeks. Tr. 1157.

---

[4] There is no calendar included for the month of August 2013.

During a May 8, 2013, visit with her treating rheumatologist Carmen E. Gota, M.D., (Tr. 1121-1127), Caudill-Smith reported having headaches (Tr. 1121).

Caudill-Smith saw Dr. Parker on July 5, 2013.  Tr. 1146-1155.  Caudill-Smith reported having migraines three times per week.  Tr. 1150.  She was taking Imitrex and usually required two doses.  Tr. 1150-1151.  Dr. Parker gave Caudill-Smith a refill of Imitrex and noted that Caudill-Smith was also on Cymbalta and Lyrica which may have some migraine preventative effects.  Tr. 1151.

In another visit with Dr. Gota on August 8, 2013, (Tr. 1230-1235), Dr. Gota noted that Caudill-Smith had headaches (Tr. 1231).  Also, on August 8, 2013, Dr. Gota completed a Fibromyalgia Residual Functional Capacity Questionnaire (Tr. 1129-1130) wherein she identified "frequent, severe headaches" as one of a number of symptoms that Caudill-Smith experienced (Tr. 1129).  Dr. Gota opined that, as a result of Caudill-Smith's impairments[5] or treatment, she would likely be absent from work more than four times a month.  Tr. 1130.

In a form entitled "Questionnaire: Medical Statement Regarding Headaches/Third Party," dated September 1, 2013, William Smith, Plaintiff's husband, indicated that he observed his wife having a headache/migraine more than once a day.  Tr. 308-309.  Mr. Smith reported that Plaintiff's migraines arise all of a sudden.  Tr. 309.  Caudill-Smith takes migraine medication, lies down, applies cold rags, and avoids light and noise.  Tr. 309.  Mr. Smith estimated his wife's migraines lasted several hours to several days and indicated that Plaintiff experienced the following in conjunction with a migraine: increased sensitivity to noise and light, lack of appetite, irritability, nausea and vomiting, and fatigue/general weakness.  Tr. 308-309.

---

[5] In the comment section, Dr. Gota noted "severe fibromyalgia with severe depression."  Tr. 1130.

4

**C.     Plaintiff's testimony**

Caudill-Smith was represented at and testified at the hearings held on September 16, 2013 (Tr. 86-91, 92-95), and December 2, 2013 (Tr. 44-66, 72, 78-79).  While noting that Caudill-Smith had "a great deal of health problems," Caudill-Smith's attorney asked Caudill-Smith to identify which of the issues were "causing the most impediment to [her] ability to work right now."  Tr. 46.  In response, Caudill-Smith stated "the amount of pain that I have, and also the agoraphobia - - I am - - fear.  Fear is a big thing."  Tr. 46.  Caudill-Smith provided further testimony regarding how her impairments impacted her ability to function on a daily basis, including the extent to which she was able to care for her herself, her son, and her granddaughter.  Tr. 46-66.  She also discussed treatment and medication she has received for her physical and mental impairments.  Tr. 46-66.

**D.     Vocational expert's testimony**

Vocational Expert Kathleen L. Reis ("VE") testified at the December 3, 2013, hearing.[6] Tr. 66-76, 219.  The ALJ asked the VE to assume an individual similar to Caudill-Smith in age, education and work history who is able to engage in light exertion work; who can stand and walk about 6 hours; who should never climb any ladders, ropes or scaffolds; who can occasionally climb ramps and stairs; who can frequently stoop, crouch and crawl; who has unlimited balancing and kneeling; who can reach occasionally overhead with the right upper extremity; needs to avoid jobs with exposure to hazards for one-third of the day or more; can understand, remember and carry out instructions consistent with performing work at SVP 1 through 2 (unskilled work); can maintain concentration, persistence and pace for unskilled work; no

---

[6] Vocational Expert Gene Burkhammer testified at the September 16, 2013, hearing.  Tr. 91, 186.  Mr. Burkhammer's testimony was limited to describing Caudill-Smith's past relevant work.  Tr. 91.  Mr. Burkhammer described Caudill-Smith's past work as a press operator and rural mail carrier as medium level work.  Tr. 91.

interaction with the general public, but incidental contact would be fine; can interact with coworkers and supervisors up to occasionally to speak, signal, take instructions and carry out instructions; can engage in no mentoring or persuading; and is limited to routine step changes in the work place setting.  Tr. 66-68.  The VE indicated that the described individual would be unable to perform Caudill-Smith's past relevant work because her past relevant work is characterized as medium level work.  Tr. 67.  The VE indicated that there would be other work that the described individual could perform, including (1) merchandise marker; (2) mailroom clerk outside of the post office; and (3) housekeeping cleaner.[7]  Tr.  68-69.

      For her second hypothetical, the ALJ asked the VE to assume the same individual as described in the first hypothetical except that the individual would have to avoid jobs where teamwork is an essential part of the job duties.  Tr. 69-72.  The VE indicated that the three jobs identified would remain available to the individual described in the second hypothetical.  Tr. 72.

      For her third hypothetical, the ALJ asked the VE to assume the individual described in the second hypothetical except the individual would be limited to sedentary work.  Tr.  72-73.  The VE indicated that, with the restriction of sedentary work, there would be no jobs available. Tr. 73

      Caudill-Smith's attorney asked the VE whether her response to the second hypothetical would be different if the described individual would be further restricted by needing to use an assistive device such as a cane in her dominant hand.  Tr. 74-75.  The VE indicated that the mailroom clerk position could be performed with a cane.  Tr. 75-76.  The VE was unable to identify other jobs that could be performed.  Tr.  75-76.  In response to a question from Caudill-Smith's attorney regarding tolerance for worker absenteeism, the VE indicated that employers of

---

[7] The VE provided job incidence data for the jobs she identified.  Tr. 68-69.  Based on her experience that about half of the housekeeping jobs are in hotels, the VE reduced the number of available housekeeping jobs by half to account for the restriction of only incidental contact with the public.  Tr. 69.

6

unskilled workers would not tolerate an individual being absent from work two times per month on a regular basis. Tr. 76.

### III. Standard for Disability

Under the Act, 42 U.S.C § 423(a), eligibility for benefit payments depends on the existence of a disability. "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Furthermore:

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . .

42 U.S.C. § 423(d)(2).

In making a determination as to disability under this definition, an ALJ is required to follow a five-step sequential analysis set out in agency regulations. The five steps can be summarized as follows:

1. If the claimant is doing substantial gainful activity, he is not disabled.

2. If the claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If the claimant is not doing substantial gainful activity, is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, the claimant is presumed disabled without further inquiry.

4. If the impairment does not meet or equal a listed impairment, the ALJ must assess the claimant's residual functional capacity and use it to determine if the claimant's impairment prevents him from doing past relevant work. If the claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5.  If the claimant is unable to perform past relevant work, he is not disabled if, based on his vocational factors and residual functional capacity, he is capable of performing other work that exists in significant numbers in the national economy.

20 C.F.R. § 404.1520; *see also Bowen v. Yuckert*, 482 U.S. 137, 140-42, 96 L. Ed. 2d 119, 107 S. Ct. 2287 (1987). Under this sequential analysis, the claimant has the burden of proof at Steps One through Four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at Step Five to establish whether the claimant has the Residual Functional Capacity ("RFC") and vocational factors to perform work available in the national economy. *Id.*

### IV. The ALJ's Decision

In her February 7, 2014, decision, the ALJ made the following findings:[8]

1.  Caudill-Smith met the insured status requirements through December 31, 2017.  Tr. 16-17.

2.  Caudill-Smith had not engaged in substantial gainful activity since January 3, 2012, the alleged onset date.  Tr. 17.

3.  Caudill-Smith had the following severe impairments: degenerative disc disease, fibromyalgia, rotator cuff tendinosis, depression, and anxiety. Tr. 17.

4.  Caudill-Smith did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. Tr. 17-19.

5.  Caudill-Smith had the RFC to perform less than a full range of light work. She could stand and walk 6 hours of an 8-hour workday; never climb ladders, ropes, or scaffolds; occasionally climb ramps and stairs; frequently stoop, crouch, and crawl; unlimited balancing and kneeling; occasional overhead reaching with the right upper extremity; must avoid exposure to hazards one-third of the day or more; understand, remember, and carry out instructions consistent with SVP 1 or SVP 2 (unskilled work); maintain concentration, persistence, and pace for unskilled work;

---

[8] The ALJ's findings are summarized.

>    no interaction with the general public but incidental contact is fine; interact with co-workers and supervisors up to occasionally to speak, signal, take instructions, and carry out instructions; no mentoring or persuading tasks; and limited to routine type changes in the workplace setting. Tr. 19-31.

6. Caudill-Smith was unable to perform any past relevant work. Tr. 31-32.

7. Caudill-Smith was born in 1965 and was 46 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. Tr. 32.

8. Caudill-Smith had at least a high school education and was able to communicate in English. Tr. 32.

9. Transferability of job skills was not an issue because Caudill-Smith's past relevant work was unskilled. Tr. 32.

10. Considering Caudill-Smith's age, education, work experience and RFC, there were jobs that existed in significant numbers in the national economy that Caudill-Smith could perform, including merchandise marker, mail room clerk, and housekeeping cleaner. Tr. 32-33.

Based on the foregoing, the ALJ determined that Caudill-Smith had not been under a disability from January 3, 2012, through the date of the decision. Tr. 33.

## V. Parties' Arguments

Caudill-Smith's sole argument is that the Commissioner's decision is not supported by substantial evidence because the ALJ did not take into account the effect of Caudill-Smith's migraine headaches when assessing her RFC. Doc. 15, pp. 20-23, Doc. 19.  In response, the Commissioner argues that not identifying migraines as a severe or non-severe impairment is not a basis for reversal because Caudill-Smith has not demonstrated that the severity of her impairment required restrictions in the RFC beyond the restrictions included therein. Doc. 18, pp. 5-7.  Additionally, the Commissioner notes that, although Caudill-Smith claims that her migraines were severely debilitating, she did not mention migraine headaches during the hearing in this case nor did she mention them in her disability application paperwork. Doc. 18, pp. 7-8.

Thus, the Commissioner contends that it was reasonable for the ALJ not to have discussed Caudill-Smith's migraines. Doc. 18, p. 8.

## VI. Law & Analysis

### A. Standard of review

A reviewing court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record. 42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992) (quoting *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)).

A court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, a reviewing court cannot overturn the Commissioner's decision "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). When assessing whether there is substantial evidence to support the ALJ's decision, the Court may consider evidence not referenced by the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).

B.  **Reversal and remand is not warranted for further consideration of evidence pertaining to Caudill-Smith's migraine headaches**

Caudill-Smith contends that reversal and remand is warranted because the ALJ completely disregarded evidence regarding her migraines and that, because of the severity and frequency of her migraines, the RFC and VE hypothetical should have included a limitation that she would miss work more than four times a month.  She argues that there was no mention of her migraine headaches in the ALJ's decision, including at Step Two.  However, in rendering a decision, an ALJ is not obligated to discuss every piece of evidence.  *Simons v. Barnhart,* 114 Fed. Appx. 727, 733 (6th Cir.2004) ("[A]n ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered.") (internal citations omitted).   Additionally, the ALJ found severe impairments, including fibromyalgia, at Step Two (Tr. 17) and continued with the remaining steps of the sequential evaluation and assessed the limiting effects of Caudill-Smith's impairments and associated symptoms (Tr. 17-33).   Thus, the ALJ's failure to find migraine headaches a severe impairment at Step Two does not warrant reversal.  *See Mariarz v. Sec'y of H.H.S.*, 837 F.2d 240, 244 (6th Cir. 1987).

For example, the ALJ discussed and considered evidence regarding Caudill-Smith's fibromyalgia diagnosis.  Tr. 17, 26, 29, 30.  Among the evidence considered was the August 8, 2013, opinion of Dr. Gota, Caudill-Smith's rheumatologist.  Tr. 30, 1129-1130.  In that opinion, Dr. Gota identified frequent, severe headaches as one of many symptoms associated with Caudill-Smith's fibromyalgia (Tr. 1129) and she opined that Caudill-Smith's impairments or treatment would likely cause her to be absent from work more than four times per month (Tr. 1130).  The ALJ discussed and assigned weight to Dr. Gota's opinion.  Tr. 30.  The ALJ

explained that Dr. Gota's extreme limitations, including her opinion that Caudill-Smith would be absent from work more than four times per month, were not supported by the record, including the treatment notes.  Tr. 30.  Also, the ALJ concluded that Dr. Gota's extreme limitations were inconsistent with other evidence of record, i.e., Caudill-Smith's activities of daily living.  Tr. 30.

Caudill-Smith contends that Dr. Gota's limitation of missing four or more day of work per month is consistent with the frequency of headaches noted on her personal calendar entries.  Doc. 19, p. 2.  However, Caudill-Smith does not challenge the weight assigned to Dr. Gota's opinion nor does she contend that the ALJ failed to adhere to the treating physician rule when weighing the opinion evidence.  Thus, any claim that the ALJ erred in assigning no weight to Dr. Gota's opinion, including her opinion that Caudill-Smith would likely miss four or more days of work per month, is waived.  See *McPherson v. Kelsey*, 125 F.3d 989, 995–996 (6th Cir. 1997) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." ) (internal citations omitted).  Furthermore, Caudill-Smith has not challenged the ALJ's finding that Caudill-Smith's complaints and alleged limitations were not fully credible.  Thus, since the ALJ did not find Caudill-Smith's allegations fully credible, any claim that the ALJ erred because she did not incorporate further limitations in the RFC based on her subjective reports of headaches, as documented in her calendar entries, is without merit.

In addition to considering Dr. Gota's opinion, the ALJ considered third-party forms completed by Caudill-Smith's husband, sister and niece.  Tr. 30.  Included among those forms is a form completed by Caudill-Smith's husband entitled "Questionnaire: Medical Statement Regarding *Headaches*/Third Party."  Tr. 308-309 (emphasis supplied).  The ALJ assigned little

weight to the third-party forms because of the personal relationship and because the forms were more appropriate for medical or mental health professionals to complete.  Tr. 30.  Caudill-Smith does not challenge the weight assigned to the third-party forms.   Thus, any such argument is waived.  See *McPherson*, 125 F.3d at 995–996.

The ALJ's discussion and weighing of Dr. Gota's opinion as well as third-party forms, which included allegations of severe headaches, demonstrate that the ALJ did not ignore evidence regarding Caudill-Smith's migraine headache allegations or fail to consider the allegations regarding the limiting effects of her migraine headaches.[9]

Other than the limitation of missing four of more days each month contained in Dr. Gota's opinion, which was considered by and assigned no weight by the ALJ, Caudill-Smith has identified no other limitations that she contends should have been included in the RFC assessment to account for her migraines.  Moreover, while Caudill-Smith contends that her migraines were so debilitating that she would miss four or more days of work each month, when asked during the hearing the main reasons why she was unable to work, Caudill-Smith indicated it was her pain and agoraphobia (Tr. 46) and, when applying for DIB, Caudill-Smith did not identify migraines as a condition that limited her ability to work (Tr. 245 (identifying sleep apnea, back injury, fibromyalgia, severe depression, chronic pain, chronic fatigue, rotator cuff damage, golfers elbow damage, and restless leg syndrome as conditions that limited her ability to work)).  The Regulations make clear that a claimant's RFC is an issue reserved to the Commissioner and the ALJ assesses a claimant's RFC "based on all of the relevant evidence" of record.  20 C.F.R. §§ 404.1545(a); 20 C.F.R. § 404.1546(c).  Here, the ALJ assessed Caudill-

---

[9] Caudill-Smith points to treatment records that reflect that Dr. Parker prescribed medication for her migraines and advised Caudill-Smith to keep a headache calendar.  Doc. 15, p. 21 (citing Tr. 1157).  However, those same treatment notes also reflect that Caudill-Smith had been taking Imitrex for her migraines; the medicine had worked well but Caudill-Smith was out of the medication; and Dr. Parker's course of action included prescribing Imitrex.  Tr. 1157.  Caudill-Smith has not shown how these records support the need for RFC limitations beyond those included in the RFC or that the ALJ's failure to discuss these specific records constitutes reversible error.

13

Smith's RFC based on all relevant evidence and Caudill-Smith has failed to demonstrate that the RFC is not supported by substantial evidence.

Moreover, the VE testimony upon which the ALJ relied was provided in response to a hypothetical question that accurately portrayed the limitations found by the ALJ as credible and supported by the evidence and contained in the RFC.  Thus, the ALJ's reliance upon the VE testimony was proper and constitutes substantial evidence to support the finding of no disability. *See Parks v. Social Sec. Admin.*, 413 Fed. Appx. 856, 865 (6th Cir. 2011) (citing *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516 (6th Cir. 2010) and *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993)).

### VII. Recommendation

For the foregoing reasons, the undersigned recommends that the Court **AFFIRM** the Commissioner's decision.

April 20, 2016

Kathleen B. Burke
United States Magistrate Judge

### **OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  See *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).